LAW OFFICES

# WEIR LLP

**A Pennsylvania Limited Liability Partnership**

**The Widener Building, Fifth Floor**
1339 Chestnut Street, Philadelphia, Pennsylvania 19107

WEIRLAWLLP.COM

**Jennifer Hiller Nimeroff**　　　　　　　　　　　　　　　　　　　　Direct Dial (215) 241-7757
Member of PA and NJ Bars　　　　　　　　　　　　　　　　　　　E-mail: jhiller@weirlawllp.com

March 13, 2025

<u>*Via CM/ECF*</u>
Honorable Evelyn Padin, U.S.D.J.
United States District Court
Martin Luther King Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

　　　　　　Re:　Jessica Kratovil and Brian Rak v. Piscataway Township
　　　　　　　　Docket No. 2:24-cv-10661

Dear Judge Padin:

　　　This law firm represents the Plaintiffs, Jessica Kratovil and Brian Rak. Kindly accept Plaintiffs' response to the pre-motion letter submitted by Defendant, Piscataway Township (the "Township"), requesting leave to file a motion to dismiss Counts I – III of Plaintiff's Complaint.

　　　The New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (the "Act") proscribes an action against a public entity under the Act unless the claim on which it is based has been presented in accordance with the procedures set forth in the Act. N.J.S.A. 59:8-3. The Act requires the claimant to provide notice of a claim within ninety (90) days after the accrual of the cause of action. N.J.S.A. 59:8-8. Nonetheless, claimants are permitted to maintain claims in the absence of strict compliance with the Act, so long as "notice has been given in a way, which . . . substantially satisfies the purposes for which notices of claims are required." *Lebron v. Sanchez,* 407 N.J. Super. 204, 215-16 (App. Div. 2009) (citation omitted). Those purposes are: (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the brining of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet. *Beauchamp v. Amedio,* 164 N.J. 111, 121-22 (2000) (citations omitted).

　　　Plaintiffs have substantially complied with, and have satisfied the purposes of, the Act. The Township has known about the flooding issues plaguing Plaintiffs' property since 2020, has investigated, and has declined to take any meaningful action to rectify the flooding. In or about July of 2020, Plaintiffs first notified the Township of the flooding issue caused by what they surmised was deficient drainage in the stream on their property (in which the Township owns a 30

Honorable Evelyn Padin, U.S.D.J.
March 13, 2025
Page 2

foot wide sanitary sewage easement and a 10 foot wide drainage easement). In September of 2020, the Director of Public Works (the "Director") for the Township responded that the Township was restricted from performing any work in the stream. In December of 2020, Plaintiffs reached out to the Director to complain about erosion from the flooding and two trees that had fallen over. The Township declined to involve itself with the issues involving natural resources.

On January 11, 2021, Jeffrey Malatesta, Esquire, on behalf of Plaintiffs, sent a written demand to the Township for repair and maintenance of its drainage easement. That letter expressly notified the Township that its failure to comply may result in the filing of a lawsuit against the Township. The Township's attorney, Rajvir S. Gomer, Esquire, responded by letter on March 11, 2021, explaining that the Township has no responsibility and would not be taking any action to assist Plaintiffs. On May 18, 2021, Plaintiffs' attorney responded to Attorney Gomer, taking exception to the Township's view of its responsibilities, demanding reimbursement to Plaintiffs for expenses related to the removal of the fallen trees in the amount of $2,825.56 and, again, requesting the Township to address the ongoing flooding issue. The Township did not respond.

Plaintiffs retained an engineer to conduct a drainage evaluation and prepare a drainage study to determine the probable cause of the flooding. Plaintiffs then retained Weir LLP and, on June 21, 2024, Weir LLP issued a letter to the Director explaining that an engineer had performed a drainage study and that it concluded: (a) that the 48 inch pipe on the property is inadequate for the capacity of stormwater being directed to it, resulting in the area surrounding it to become inundated; (b) that a portion of the 48 inch pipe is back pitched (sloped opposite to the flow of water); and (c) the current stormwater drainage system can handle only 14% (approximately) of the estimated flow of a 25-year storm. Weir LLP explained of the dangerous condition affecting Plaintiffs' property, that Plaintiffs disputed the conclusions reached by the Township, and that possibly, actions on the part of the Township could be taken to address the flooding issues. Counsel requested a meeting to discuss formulation and implementation of a plan of action.

After the passage of nearly a month, Weir LLP wrote the following to the Director:

> Having received no response to [our June 21, 2024] letter leads us to conclude that the Township of Piscataway is not interested in having a discussion, in implementing a plan of action, or in resolving [Plaintiffs'] drainage/flooding issues but, instead, would prefer to litigate. While not the result [Plaintiffs] were hoping for, they are not adverse to seeking court intervention. Should we be misconstruing the Township's silence, please let us hear from you by Monday, July 22, 2024.

No meaningful response was received and, on October 22, 2024, Plaintiffs commenced this action in Middlesex County Superior Court. The Township removed the case on November 21, 2024.

Collectively, Plaintiffs' written communications to the Township provided all the information required by the Act. Plaintiffs notified the Township of their names and address, the post-office address to which they desired notice to be sent, the date, place and circumstances giving rise to their claim, a general description of the damage or loss incurred (so far as it was known at

Honorable Evelyn Padin, U.S.D.J.
March 13, 2025
Page 3

the time), the name of the public entity causing the damage or loss, and the amount claimed as of the date of presentation of the claim. N.J.S.A. 59:8-4. The notice allowed for the Township to conduct a timely investigation and protected the Township's access to current information about the occurrence giving rise to the claim. Plaintiffs also afforded the Township several opportunities short of litigation to correct the condition giving rise to their claim. In summary, the facts and evidence establish that Plaintiffs have substantially complied with the requirements of the Act and that the Township was not only on notice of Plaintiffs' claim, but also, arguably, were involved in the defense of the claim. It is disingenuous for the Township to now argue lack of notice when the Township's attorney was involved in responding to Plaintiffs' claim.

Next, public policy concerns of judicial efficiency, conservation of resources and consistency of outcomes all favor the denial of the Township's requested relief. Plaintiffs' tort claims are "continuing torts." The continuing tort doctrine is an established doctrine in New Jersey, *Russo Farms, Inc. v. Vineland Bd. of Educ.,* 144 N.J. 84, 99 (1996), and it arises when an individual is subjected to a continual, cumulative pattern of tortious conduct. *Wilson v. Wal-Mart Stores,* 158 N.J. 263, 272 (1999). It is widely held that periodic flooding due to defective construction of a drainage system is a continuing tort. *Russo, supra,* at 101-02; *see also, Sheppard v. Township of Frankford,* 261 N.J. Super. 5, 8-9 (App. Div. 1992) (noting that disposal of water runoff onto plaintiffs' property created a continuing nuisance). Accordingly, the doctrine applies to claims alleging dangerous condition, nuisance and trespass. *Russo, supra,* at 105-06. Under the continuing tort doctrine, the alleged tortious conduct is the alleged present failure to remove the dangerous condition, nuisance or trespass, for example, and accrues anew each day. *Wreden v. Twp. of Lafayette,* 436 N.J. Super. 117, 125 (App. Div. 2014) (citing *Rapf v. Suffolk Cnty.,* 755 F.2d 282, 292 (2d Cir. 1985).

As a result of the continuing tort doctrine, dismissal of Plaintiffs' tort claims for failure to provide adequate notice to the Township under the Act will not result in the finality of Plaintiffs' tort claims. The Township's continued failure to address the drainage and flooding issues gives rise to new claims for which Plaintiffs may submit a proof of claim and commence suit upon rejection of the claim. While this procedure is available to Plaintiffs, it is not desired. Not only will the adjudication of Plaintiffs' tort claims be delayed, but more than that, the litigation of those tort claims will occur in state court, which could result in an outcome inconsistent with this case based upon, essentially, the same evidence. The state court litigation also will require additional time and resources, by both the litigants and the court system. Given the substantial likelihood of another lawsuit being filed involving identical parties, evidence, experts, etc., public policy concerns favor adjudicating these claim now.

Respectfully submitted,

Jennifer Hiller Nimeroff, Esquire
Robert D. Sokolove, Esquire, *pro hac vice*

JHN/
cc:   William S. Bloom, Esquire (*via* ECF/CM)