# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JESSICA KRATOVIL AND BRIAN RAK | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 2:24-cv-10661 |
| | : | |
| PISCATAWAY TOWNSHIP | : | |
| | : | |
| Defendant | : | |
| | : | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I, II AND III OF PLAINTIFFS' AMENDED COMPLAINT WITH PREJUDICE**

**Motion Day: February 2, 2026**

　　　　　　　　　　　WEIR LLP
　　　　　　　　　　　A Pennsylvania Limited Liability Partnership


　　　　　　　　　　　BY: *s/ Jennifer Hiller Nimeroff*
　　　　　　　　　　　　　Jennifer Hiller Nimeroff, Esquire
　　　　　　　　　　　　　Robert D. Sokolove, Esquire
　　　　　　　　　　　　　1300 Route 73, Suite 314
　　　　　　　　　　　　　Mounty Laurel, NJ 08054
　　　　　　　　　　　　　(856) 429-7750
　　　　　　　　　　　　　(856) 427-0360 (Facsimile)
　　　　　　　　　　　　　jhiller@weirlawllp.com
　　　　　　　　　　　　　rsokolove@weirlawllp.com

　　　　　　　　　　　*Attorneys for Plaintiffs*

Dated: January 20, 2026

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

      A.      Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

      B.      Plaintiffs Have Sufficiently Pleaded Their Tort Claims
           Against The Township In Counts I, II And III Of The
           Amended Complaint, As Their Factual Allegations
           Demonstrate The Township Received Notice Of Plaintiffs'
           Claims And That Such Notice Substantially Satisfied The
           Purposes For Which Notices Of Claim Are Required . . . . .   7

      C.      Public Policy Concerns Favor Allowing Plaintiff To Pursue
           Their Tort Claims Against The Township In This Case . . .   14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

## TABLE OF CITATIONS

**CASES** Page

*Anske v. Borough of Palisade Park,*
    139 N.J. Super. 342, 354 A.2d 87 (App. Div. 1976) . . . . . . . . . .  8

*Ashcroft v. Iqbal,*
    556 U.S. 662, 679, 129 S.Ct. 1937, 1950,
    173 L.Ed.2d 868 (2009) . . . . . . . . . . . . . . . . . . . . . .  7

*Beauchamp v. Amedio,*
    164 N.J. 111, 121-22 (2000). . . . . . . . . . . . . . . . . . . . . . . . .  8

*D.D. v. Univ. of Med. & Dentistry of N.J.,*
    213 N.J. 130 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12-13

*D'Eustachio v. Beverly,*
    177 N.J. Super. 566, 427 A.2d 126 (Law Div. 1979) . . . . . . . . . .  9, 11

*Fowler v. UPMC Shadyside,*
    578 F.3d 203, 210-211 (3d. Cir. 2009) . . . . . . . . . . . . . . . . . . .  7

*Garrett v. Wexford Health,*
    938 F.3d 69, 91 (3d Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . .  6

*H.C. Equities, LP v. County of Union,*
    247 N.J. 366 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13-14

*Henderson v. Herman,*
    373 N.J. Super. 625, 633 (App. Div. 2004) . . . . . . . . . . . . . . . .  13

*Lameiro v. West New York Bd. of Ed.,*
    136 N.J. Super. 585, 347 A.2d 377 (Law Div. 1975) . . . . . . . . . .  8-9

*Lebron v. Sanchez,*
    407 N.J. Super. 204, 215-16 (App. Div. 2009) . . . . . . . . . . . . . .  8, 9, 12
    13, 14

**CASES (Cont.)**                                            Page

*O'Donnell v. New Jersey Turnpike Authority,*
    236 N.J. 335, 345 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Rapf v. Suffolk Cnty.,*
    755 F.2d 282, 292 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Russo Farms, Inc. v. Vineland Bd. of Educ.,*
    144 N.J. 84, 99, 675 A.2d 1077, 1084 (1996). . . . . . . . . . . . . . . . . .   14

*Schaedler v. Reading Eagle Publ'n, Inc.,*
    370 F.2d 795, 798 (3d Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . .   6-7

*Sheppard v. Township of Frankford,*
    261 N.J. Super. 5, 8-9 (App. Div. 1992) . . . . . . . . . . . . . . . . . . . . .   15

*Tuckey v. Harleysville Ins. Co.,*
    236 N.J. Super. 221, 225 (App. Div. 1989) . . . . . . . . . . . . . . . . . . .   13

*Wilson v. Wal-Mart Stores,*
    158 N.J. 263, 272 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Wreden v. Twp. of Lafayette,*
    436 N.J. Super. 117 (App. Div. 2014) . . . . . . . . . . . . . . . . . . . . . . .   15

**STATUTES**

N.J.S.A. 59:8-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
N.J.S.A. 59:8-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
N.J.S.A. 59:8-8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

**RULES**

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

## INTRODUCTION

The Township of Piscataway ("Township") seeks dismissal of Plaintiffs' claims for dangerous condition/negligence, nuisance and trespass (Counts I, II and III of Plaintiffs' Amended Complaint, respectively), with prejudice, based on Plaintiffs' alleged failure to comply with the notice provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (the "Act"). The Township's Motion to Dismiss is grounded in strict compliance with the Act. But, New Jersey Courts permit parties to maintain claims against municipalities in the absence of strict compliance with the Act, so long as notice as been given in a way which substantially satisfies the purposes for which notices of claim are required.

Such notice was given in this case. The undisputed facts pleaded in the Amended Complaint show that (a) Plaintiffs' property has flooded on repeated occasions, (b) the Township had been aware of the flooding issue, (c) the Plaintiffs and their legal representatives communicated their claims to the Township in writings, some of which were supported by engineering reports, and (d) the Township's Attorney was on notice of the flooding issue plaguing Plaintiffs' property. The Township was not only on notice of Plaintiffs' claims, but also, investigated Plaintiffs' claims. It would be favoring form over substance to dismiss Plaintiffs' tort claims when it is undisputed that prior to the commencement of Plaintiffs' lawsuit, the Township had actual notice of Plaintiffs' claims related to the

flooding on their property caused by the Township, has had all the information that would be provided in a formal Tort Claim Notice and has undertaken an investigation.

## PROCEDURAL HISTORY

On October 22, 2024, Plaintiffs commenced this lawsuit in the Superior Court of New Jersey, Law Division, Middlesex County, by the filing of a four count Complaint against the Township. Plaintiffs' claims against the Township are as follows: Count I: dangerous condition/negligence; Count II: nuisance; Count III: trespass; and Count IV: inverse condemnation. The Township removed the action to this Court on November 21, 2024. (Dkt. No. 1). Plaintiffs filed an Amended Complaint on May 21, 2025. (Dkt. No. 21).

The Township filed an Answer to Plaintiffs' Amended Complaint on May 28, 2025 (Dkt. No. 23) and a Motion to Dismiss Counts I – III of Plaintiffs' Amended Complaint With Prejudice For Failure To Comply With The Notice Requirements Of The Tort Claims Act, N.J.S.A. 59:8-8 (Dkt. No. 31) on August 6, 2025. On December 24, 2025, the Court administratively terminated the Township's Motion to Dismiss for failure to comply with Fed. R. Civ. P. 7(b)(1) (Dkt. No. 39), but allowed the Township to re-file its Motion, which it did on January 5, 2026 (the "Motion") (Dkt. No. 40).

## FACTUAL BACKGROUND

The Township has known about the drainage and flooding issue plaguing Plaintiffs' property, 1247 Brookside Drive, Piscataway, New Jersey 08854 (the "Property") for several years, has investigated and declined to take any action to rectify the flooding. (Certification of Counsel ("Cert."), Amended Complaint ("Am. Complaint"), ¶¶25-40 and Exhibits A – F). More specifically, and as alleged in Plaintiffs' Amended Complaint, in or about July of 2020, Plaintiffs first notified the Township of the flooding issue caused by what they surmised was deficient drainage in the stream on their Property (in which the Township owns a 30-foot wide sanitary sewage easement and a 10-foot wide drainage easement (the "Easements"). (Cert., Am. Complaint at ¶25 and at Exh. A, pg. 3). The Township, purporting to address Plaintiffs' concerns, removed a log from the stream.[1] *Id.*

Plaintiffs allege that two months later, on September 3, 2020, they notified the Director of Public Works (the "Director") for the Township, via email, of more flooding in Plaintiffs' yard during a recent rain event. (Cert., Am. Complaint at ¶ 27 and at Exh. A, pgs. 3-4). The following day, the Director responded to Plaintiffs, via

---

[1] Plaintiffs assert that this log had been laying in the stream for several years prior to the commencement of the flooding issues. (Cert., Am. Complaint at ¶ 26 and at Exh. A, pg. 3).

email, explaining how the Township was allegedly restricted from performing any work in the stream. (Cert., Am. Complaint at ¶ 28 and at Exh. A, pg. 4).

Plaintiffs allege that several months thereafter, in December of 2020, they again reached out to the Director, via email, to complain about erosion from the flooding and about two trees that had fallen over. (Cert., Am. Complaint at ¶ 29 and at Exh. A, pg. 5). The Township explained, via mail, that although it owned the two easements within the stream, it did not own the channel containing the stream and, therefore, allegedly, it had no responsibility to address any issues within the stream. The Township declined to involve itself with the issues involving "natural resources." (Cert., Am. Complaint at ¶ 30 and at Exh. A, pg. 6).

Plaintiffs allege that on January 11, 2021, Jeffrey Malatesta, Esquire ("Attorney Malatesta"), on behalf of Plaintiffs, sent a written demand to the Township for repair and maintenance of its drainage easement. (Cert., Am. Complaint at ¶ 31 and at Exh. B). That letter expressly notified the Township that its failure to comply may result in the filing of a lawsuit against the Township. *Id.* The Township's attorney, Rajvir S. Goomer, Esquire ("Attorney Goomer"), responded by letter on March 11, 2021, explaining that the Township has no responsibility and would not be taking any action to assist Plaintiffs. (Cert., Am. Complaint at ¶ 32 and at Exh. C). On May 18, 2021, Attorney Malatesta responded to Attorney Goomer, taking exception to the Township's view of its responsibilities,

demanding reimbursement to Plaintiffs for expenses related to the removal of the fallen trees in the amount of $2,825.56 and, again, requesting the Township to address the ongoing flooding issue at and near Plaintiffs' Property. (Cert., Am. Complaint at ¶ 33 and at Exh. D). The Township did not respond to Attorney Malatesta's May 18th letter. (Cert., Am. Complaint at ¶ 34).

Plaintiffs allege that given the absence of any concern on the part of the Township and its unsatisfactory responses to Plaintiffs' plea, they retained an engineer to conduct a drainage evaluation and prepare a drainage study to determine the probable cause of the flooding. (Cert., Am. Complaint at ¶ 35).

Plaintiffs allege they retained new counsel and, on June 21, 2024, their new counsel, Weir LLP, issued a letter to the Director explaining that an engineer had performed a drainage study and that it concluded: (a) that the 48 inch pipe on the Property is inadequate for the capacity of stormwater being directed to it, resulting in the area surrounding it to become inundated; (b) that a portion of the 48 inch pipe is back pitched (sloped opposite to the flow of water); and (c) the current stormwater drainage system can handle only 14% (approximately) of the estimated flow of a 25-year storm. (Cert., Am. Complaint at ¶ 36 and at Exh. E). Weir LLP explained of the dangerous condition affecting Plaintiffs' Property, that Plaintiffs disputed the conclusions reached by the Township, and that possibly, actions on the part of the

5

Township could be taken to address the flooding issues. *Id.* Weir LLP also requested a meeting to discuss formulation and implementation of a plan of action. *Id.*

Plaintiffs allege that after the passage of nearly a month without a response, on July 15, 2024, Weir LLP wrote the following to the Director:

> Having received no response to [our June 21, 2024] letter leads us to conclude that the Township of Piscataway is not interested in having a discussion, in implementing a plan of action, or in resolving [Plaintiffs'] drainage/flooding issues but, instead, would prefer to litigate. While not the result [Plaintiffs] were hoping for, they are not adverse to seeking court intervention. Should we be misconstruing the Township's silence, please let us hear from you by Monday, July 22, 2024.

(Cert., Am. Complaint at ¶ 37 and at Exh. F). Plaintiffs allege that no meaningful response was received by them or by Weir LLP to the July 15, 2024 letter and that on October 22, 2024, Plaintiffs commenced the instant action against the Township. (Cert., Am. Complaint at ¶¶ 38-39).

As a result of recent rain events on May 14, 2025 and July 14, 2025, both of which caused flooding to Plaintiffs' Property, Plaintiffs submitted a Notice of Claim to the Township on July 17, 2025. (Cert., Notice of Claim).

## LEGAL ARGUMENT

### A.    Legal Standard

"The decision to dismiss a complaint should not be entered lightly because it 'forecloses inquiry into the merits.'" *Garrett v. Wexford Health,* 938 F.3d 69, 91 (3d Cir. 2019) (quoting *Schaedler v. Reading Eagle Publ'n, Inc.,* 370 F.2d 795, 798 (3d

6

Cir. 1967). A complaint is properly dismissed under Rule 12(b)(6) when it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a 12(b)(6) motion, the District Court should first separate the factual and legal elements of a claim; the Court must accept as true all well-pleaded facts in the complaint, but may disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). The Court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)).

As set forth below, Plaintiffs' Amended Complaint sufficiently alleges plausible tort claims for relief against the Township that satisfy the notice standards of the Act.

> **B.     Plaintiffs Have Sufficiently Pleaded Their Tort Claims Against The Township In Counts I, II And III Of The Amended Complaint, As Their Factual Allegations Demonstrate The Township Received Notice Of Plaintiffs' Claims And That Such Notice Substantially Satisfied The Purposes For Which Notices Of Claim Are Required.**

The New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (previously defined as the "Act") proscribes an action against a public entity under the Act unless the claim on which it is based has been presented in accordance with the procedures set forth in the Act. N.J.S.A. 59:8-3. The Act requires the claim to include the information set forth in N.J.S.A. 59:8-4, and it requires the claimant to provide notice

of a claim within ninety (90) days after the accrual of the cause of action. N.J.S.A. 59:8-8. Nonetheless, claimants are permitted to maintain claims in the absence of strict compliance with the Act, so long as "notice has been given in a way, which … substantially satisfies the purposes for which notices of claims are required." *Lebron v. Sanchez,* 407 N.J. Super. 204, 215-16 (App. Div. 2009) (citation omitted). Those purposes are: (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the brining of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet. *Beauchamp v. Amedio,* 164 N.J. 111, 121-22 (2000) (citations omitted); *O'Donnell v. New Jersey Turnpike Authority,* 236 N.J. 335, 345 (2019) (describing same as "legislative goals").

The doctrine of substantial compliance alleviates the hardship and unjust consequences which attend technical defects of otherwise valid claims where there is no prejudice to the public entity. *Anske v. Borough of Palisade Park,* 139 N.J. Super. 342, 354 A.2d 87 (App. Div. 1976). Substantial compliance exists where notification has been given in a way that substantially satisfies the purposes of the Act. *Lameiro v. West New York Bd. of Ed.,* 136 N.J. Super. 585, 347 A.2d 377 (Law

8

Div. 1975); *D'Eustachio v. Beverly,* 177 N.J. Super. 566, 427 A.2d 126 (Law Div. 1979) (finding claimant's letter was in substantial compliance with the statute and constituted notice under the Act where the letter claimed "extensive damages" and merely indicated that several horses were injured). In determining substantial compliance, a court considers the following factors: (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute. *Lebron*, 407 N.J. Super. at 216.

This Court should conclude, based upon these factors, that substantial compliance with the Act and the purposes for which notices of claim are required has been achieved. First, the Township has suffered no prejudice from not having received what it contends is the type of notice required by the Act (*i.e.,* a form titled "Notice of Claim"), as it is evident that Plaintiffs' multiple communications regarding the flooding on their Property were received by the Township, reviewed and considered by the Township, and forwarded onto counsel for the Township for additional consideration and response. The Township had an opportunity to and did, in fact, investigate Plaintiffs' claims and consulted with its attorney. Bottom line is that the Township made a determination that it was not at all responsible for

9

Plaintiffs' flooding and would not be assisting Plaintiffs in any way. Period—end of story. There is simply no prejudice that can be demonstrated under these facts.

There is no question that Plaintiffs attempted to comply with the Act. Prior to the commencement of this lawsuit, Plaintiffs provided written notice to the Township that their Property was flooding, suffering from erosion, and that they had downed trees. Specifically,

- In or about July of 2020, Plaintiffs notified the Township of the flooding issue caused by what they surmised was deficient drainage in the stream on their Property;

    o The Township, purporting to address Plaintiffs' concerns, removed a log from the stream

- On September 3, 2020, Plaintiffs notified the Director for the Township of more flooding in Plaintiffs' yard during a recent rain event.

    o The Director explained the Township was allegedly restricted from performing any work in the stream.

- In December of 2020, Plaintiff complained to the Director about erosion from the flooding and about trees that had fallen over.

    o The Township explained it had no responsibility to address any issues within the stream.

- On January 11, 2021, Plaintiffs' then attorney wrote to the Township and demanded the repair and maintenance of its drainage easement in the stream. That letter expressly notified the Township that its failure to comply may result in the filing of a lawsuit against the Township.

    o The Township's attorney responded, explaining that the Township has no responsibility and would not be taking any action to assist Plaintiffs.

- On May 18, 2021, Plaintiffs' attorney registered the Plaintiffs' disagreement with the Township, demanded reimbursement for expenses related to the removal of the fallen trees in the amount of $2,825.56, and (again) requested that the Township address the ongoing flooding issue at and near Plaintiffs' Property.

    o The Township did not respond.

- On June 21, 2024, Plaintiffs' then attorney issued a letter to the Director explaining that an engineer had performed a drainage study and that it concluded: (a) that the 48 inch pipe on the Property is inadequate for the capacity of stormwater being directed to it, resulting in the area surrounding it to become inundated; (b) that a portion of the 48 inch pipe is back pitched (sloped opposite to the flow of water); and (c) the current stormwater drainage system can handle only 14% (approximately) of the estimated flow of a 25-year storm. The attorney explained of the dangerous condition affecting Plaintiffs' Property, that Plaintiffs disputed the conclusions reached by the Township, and that possibly, actions on the part of the Township could be taken to address the flooding issues. Counsel also requested a meeting to discuss formulation and implementation of a plan of action.

- And, on July 15, 2024, Plaintiffs' then attorney issued a follow-up letter to the Director interpreting the Township's non-response as a preference to litigate, rather than resolve, Plaintiffs' drainage/flooding issues.

Plaintiffs, either on their own behalf or through counsel, communicated with the Township on no less than seven (7) occasions about flooding occurrences. They generally complied with the purpose of the Act; the Township was notified of the identity of the claimants, their addresses, the nature and scope of the flooding events giving rise to Plaintiffs' claims and a general description of the then-known damages or losses incurred. *See D'Eustachio, supra.* The Township had ample opportunity to

11

investigate Plaintiffs' claims and, in fact, conducted an inquiry and (improperly) concluded it had no responsibility for the flooding. The Township consulted with its attorneys who, on the Township's behalf, made it clear that the Township would not be taking any action to assist Plaintiffs. The Township has had ample opportunity to repair its stormwater management system at the area in question and, instead, has taken a firm stand to deny liability and assistance and to make no repairs.

Lastly, the Township was provided reasonable notice of the Plaintiffs' drainage issues, flooding issues, and erosion plaguing their Property. The notice provided by Plaintiffs to the Township of their claims substantially complies with the Act and, therefore, the Township's Motion should be denied.[2]

The Township cites the case of *D.D. v. Univ. of Med. & Dentistry of N.J.,* 213 N.J. 130 (2013), for the proposition that the doctrine of substantial compliance is narrowly applied and only used to cure technical deficiencies in an otherwise timely and written notice. The issue in *D.D.* was whether the doctrine of substantial compliance can serve to relieve a claimant of the requirement that the public entity be informed of the claim *in writing*. *Id.* at 159. The Court, finding in the negative, concluded that the doctrine of substantial compliance applies to those situations in

---

[2] Plaintiffs have no personal knowledge as to why there was not strict compliance with the Act. *See Lebron*, 407 N.J. Super. at 216 (a reasonable explanation as to why there was not strict compliance with the Act is one of five factors considered by the Court in a substantial compliance analysis).

which the notice, although both timely and in writing, has technical deficiencies that did not deprive the public entity of the effective notice contemplated by the Act. *Id.* at 159-160. We have that situation here; Plaintiffs timely notified the Township, in writing (on multiple occasions), of the flooding events they were experiencing, explained the issues, explained the damages and set forth Plaintiffs' demands. *See, e.g., Lebron, supra.* (concluding that notice that identified plaintiff and her attorney, set forth date and description of incident, listed injuries and demanded damages, but that did not specifically assert legal theory of negligent supervision substantially complied); *Henderson v. Herman,* 373 N.J. Super. 625, 633 (App. Div. 2004) (holding that notice of claim against police dispatch and emergency transport personnel that failed to include names of specific dispatchers substantially complied); *Tuckey v. Harleysville Ins. Co.,* 236 N.J. Super. 221, 225 (App. Div. 1989) (concluding that public entity was sufficiently apprised of particulars of accident and claim to substantially comply with statutory notice provision).

The Township also cites the case *H.C. Equities, LP v. County of Union,* 247 N.J. 366 (2021) for the proposition that multiple communications, *i.e.,* a collection of letters, does not constitute substantial compliance with the notice requirement of the Act. But the underlying facts of *H.C. Equities* are distinguishable from the facts underlying the instant matter and, therefore, the holding is not determinative. *H.C. Equities* involved a set of three (3) letters, sent by the plaintiff's attorney to attorneys

13

representing the defendant public entities – not to the public entities themselves – at different times, which letters the Court determined to be "incomplete communications" that failed to communicate the core information that a claimant must provide to a public entity in advance of filing a tort claim. *Id.* at 371, 387. In contrast, here, all communications except one (1) were between Plaintiff, or its counsel, and the Township/Director of Public Works. In other words, they were *direct* communication with the public entity. Since the instant case involves a continuing tort, it is understandable that there would be multiple notifications, at different times. The *H.C. Equities* Court also analyzed the letters against the five factors set forth in *Lebron, supra.,* finding *none* of the factors to favor substantial compliance. Here, all or nearly all the factors favor substantial compliance.

### C. Public Policy Concerns Favor Allowing Plaintiffs To Pursue Their Tort Claims Against The Township In This Case.

Public policy concerns of judicial efficiency, conservation of resources and consistency of outcomes all favor the denial of the Township's Motion.

Plaintiffs' tort claims are "continuing torts." The continuing tort doctrine is an established doctrine in New Jersey, *Russo Farms, Inc. v. Vineland Bd. of Educ.,* 144 N.J. 84, 99, 675 A.2d 1077, 1084 (1996), and it arises when an individual is subjected to a continual, cumulative pattern of tortious conduct. *Wilson v. Wal-Mart Stores,* 158 N.J. 263, 272 (1999). The continuing tort doctrine applies to claims alleging dangerous condition, nuisance and trespass. *Russo, supra,* at 105-106. It is

14

widely held that repeated flooding due to defective construction of a drainage system is a continuing tort. *Id.* at 101-02; *see also, Sheppard v. Township of Frankford,* 261 N.J. Super. 5, 8-9 (App. Div. 1992) (noting that disposal of water runoff onto plaintiffs' property created a continuing nuisance).

Under the continuing tort doctrine, the alleged tortious conduct is the present failure to remove the dangerous condition, nuisance and/or trespass, and it accrues anew each day. *Wreden v. Twp. of Lafayette,* 436 N.J. Super. 117 (App. Div. 2014) (citing *Rapf v. Suffolk Cnty.,* 755 F.2d 282, 292 (2d Cir. 1985)).

In light of the foregoing, dismissal of Plaintiffs' currently pending tort claims is a temporary delay of the inevitable. By way of example, as a result of rain events on May 14, 2025 and July 14, 2025, both of which caused flooding to Plaintiffs' Property, Plaintiffs submitted a Notice of Claim to the Township on July 17, 2025. After the Township denies or ignores its liability (which it will do), the Plaintiffs could seek a tort recovery in a separate lawsuit. Given the nature of the claims (that is, state law tort claims), this subsequent lawsuit will be filed in state court. This subsequent lawsuit would involve the same parties, the same evidence and the same experts; indeed, the lawsuit will, essentially, be a repeat of this lawsuit in state court, where rulings on identical issues (for example, the admissibility of expert testimony) could be inconsistent with rulings in this case. Based upon the circumstances, the public policy concerns of judicial efficiency, conservation of resources and

consistency of outcomes all favor the denial of the Township's requested relief.

## CONCLUSION

Plaintiffs' multiple communications to the Township allowed for the Township to conduct a timely investigation and protected the Township's access to current information about the occurrence(s) giving rise to Plaintiffs' claims. Plaintiffs afforded the Township several opportunities short of litigation to correct the condition giving rise to their claims. The facts and evidence establish that Plaintiffs have substantially complied with the requirements of the Act and that the Township was on notice of Plaintiffs' claims. It is disingenuous for the Township to now argue lack of notice when the Township's Director of Public Works and the Township's attorney were involved in responding to Plaintiffs' claims.

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny the Township's Motion to Dismiss Counts I, II and III of Plaintiffs' Amended Complaint With Prejudice.

Dated: January 20, 2026            WEIR LLP
                                   A Pennsylvania Limited Liability Partnership
                                   BY:   *s/ Jennifer Hiller Nimeroff*
                                         Jennifer Hiller Nimeroff, Esquire
                                         Robert D. Sokolove, Esquire
                                         1300 Route 73, Suite 314
                                         Mount Laurel, NJ 08054
                                         (856) 429-7750
                                         (856) 427-0360 (Facsimile)
                                         jhiller@weirlawllp.com
                                         rsokolove@weirlawllp.com
                                         *Attorneys for Plaintiffs*

16