<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JESSICA KRATOVIL and BRIAN RAK,<br><br>     Plaintiffs,<br><br>     v.<br><br>PISCATAWAY TOWNSHIP,<br><br>     Defendant. | No. 24cv10661 (EP) (SDA)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

This action arises from a dispute between homeowners and their municipality. Plaintiffs Jessica Kratovil and Brian Rak allege that Defendant Piscataway Township (the "Township") has mismanaged a stormwater drainage system on Plaintiffs' property (the "Property"). D.E. 21 ("Amended Complaint" or "Am. Compl."). Plaintiffs claim that because of the Township's faulty stormwater drainage system, the Property suffers from repeated flooding events, which have caused damage to their home and personal property. *Id.* For these injuries, Plaintiffs bring claims under both state and federal law. *Id.*

The Township contends that it is not responsible for the flooding, and that in any event, Plaintiffs' state-law tort claims are barred because they failed to comply with the notice requirements of the New Jersey Tort Claims Act ("TCA"), N.J. Stat. Ann. §§ 59:1-1 to 12-3. The Township therefore seeks dismissal of Plaintiffs' state-law claims (Counts One through Three). D.E. 40 ("Motion" or "Mot."). Plaintiffs oppose, D.E. 42 ("Opposition" or "Opp'n"), and the Township replies, D.E. 43 ("Reply").

The Court decides the Motion without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the following reasons, the Court will **GRANT** the Motion and **DISMISS** Counts I, II, and III ***with prejudice***.

## I.    BACKGROUND

### A.    Factual Background[1]

#### 1.    *Flooding allegations*

Plaintiffs live at the Property, which is located in Piscataway, New Jersey.  Am. Compl. ¶ 1.  The Township holds a 30-foot-wide sanitary sewage easement and a 10-foot-wide drainage easement on the Property (collectively, the "Easements").  *Id.* ¶ 25.  The Township owns, operates, controls, and maintains a stormwater-management system at and near the Property, including sewers, drains, and pipes located within the Easements.  *Id.* ¶ 9.

Plaintiffs allege that the system is inadequately sized, improperly pitched, and insufficiently maintained, causing it to overflow during significant rain events and flood the Property.  *Id.* ¶¶ 10, 21–23.  On multiple occasions, floodwaters have entered the ductwork beneath Plaintiffs' foundation, as well as their garage and shed, which has caused erosion, fallen trees, damage to Plaintiffs' personal property, cleanup costs, and possible mold conditions.  *Id.* ¶¶ 11, 15, 17–20.  Plaintiffs further allege that the Township has known about the flooding and the alleged defects in the stormwater system for years but has failed to correct the condition or otherwise prevent stormwater from flowing onto the Property.  *Id.* ¶¶ 12–13, 16, 21–24.

#### 2.    *Plaintiffs' communications with the Township*

Since July 2020, Plaintiffs have notified the Township of the flooding on several occasions.  *Id.* ¶¶ 25–30.  On July 22, 2020, Rak sent an email to the New Jersey Department of Environmental

---

[1] The Court accepts all well-pled facts as true and construes the Amended Complaint in Plaintiffs' favor.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Protection Division of Water Quality reporting that the drainage easement on the Property was backing up during heavy rain, flooding the yard, and beginning to flood portions of his house. *Id.* ¶ 25; D.E. 21-1 ("Exhibit A") at 2.[2] Someone from the department responded to Rak and directed him to contact the Piscataway Department of Public Works. Ex. A at 3.

Rak reported that he then spoke with someone in the Township's Department of Public Works, and the Township later removed a log from the stream—though Rak said it had lain there for years before flooding began. *Id.* at 3; Am. Compl. ¶ 26.

A few months later (September 2020), Plaintiffs reported additional flooding to both state and local officials, and the Township's Director of Public Works responded that work in the stream was restricted by state permitting requirements. Am. Compl. ¶¶ 27–28; Ex. A at 4–5.

After another incident in December 2020, Plaintiffs again contacted the Township. Am. Compl. ¶ 29; Ex. A at 6. The Township responded that, although it held the Easements, it did not own the stream channel and therefore was not responsible for conditions outside the purposes of the Easements. Am. Compl. ¶ 30. As the Township's Director of Public Works explained to Rak:

> The Township does not own any of the property within that stream so everything within your property lines outside of the Township responsibilities . . . would be your responsibility to maintain. . . . Unless the Township owns the channel containing the stream it has no responsibility to address any issues within it unless there is an easement that permits the Township to enter and address the purpose of that easement. Where streams or brooks have not easements the Township will not involve itself with the issues that are a product of such natural resources.

Ex. A at 7.

Plaintiffs retained counsel in early 2021. On January 11, 2021, counsel demanded that the Township repair and maintain the drainage easement, asserted that the Township's failure to do so was causing damage to the Property, and warned that continued inaction would result in litigation. Am. Compl. ¶ 31 & D.E. 21-2 ("Exhibit B"). Counsel for the Township responded that the

---

[2] For Exhibit A, the Court uses the page numbers automatically generated by CM/ECF.

Township had no responsibility for the condition and would take no action.  Am. Compl. ¶ 32 & D.E. 21-3 ("Exhibit C").

On May 18, 2021, Plaintiffs' counsel disputed that position, demanded reimbursement of $2,825.56 for the removal of the fallen trees, and again requested that the Township address the flooding.  Am. Compl. ¶ 33 & D.E. 21-4 ("Exhibit D").  The Township did not respond.  Am. Compl. ¶ 34.

At some point, Plaintiffs retained an engineer to evaluate the drainage conditions.  *Id.* ¶ 35. In June 2024, Plaintiffs' new counsel advised the Township that Plaintiffs' engineer had conducted a drainage study and concluded that the drainage system was deficient in several respects.  *Id.* ¶ 36.  Counsel requested a meeting with the Township to discuss corrective action.  *Id.*; D.E. 21-5 ("Exhibit E").  When the Township did not respond, counsel sent a follow-up letter on July 15, 2024, stating that Plaintiffs understood the Township's silence as a preference to litigate rather than resolve the dispute.  *Id.* ¶ 37; D.E. 21-6 ("Exhibit F").

After Plaintiffs received "no meaningful response" to the July 15, 2024, letter, they commenced this action on October 22, 2024.  *Id.* ¶¶ 38–39.  While this action was pending, Plaintiffs submitted a Notice of Claim to the Township.  *See* Opp'n at 15.

**B.      Procedural Background**

Plaintiffs commenced this action in the Superior Court of New Jersey, Law Division, Middlesex County, on October 22, 2024.  D.E. 1 at 1.  The Township removed the action on November 21, 2024, *id.*, and answered the original Complaint on December 6, 2024, D.E. 2.  The Township later filed a motion to dismiss without first following the Court's pre-motion letter requirement.  D.E. 10.  The Court therefore administratively terminated that motion and directed the parties to submit pre-motion letters.  D.E. 12.  After the first pre-motion conference, the

4

Township agreed that Plaintiffs could amend the complaint, and Plaintiffs filed the Amended Complaint on May 21, 2025.  D.E. 19; Am. Compl.

As in the original complaint, the Amended Complaint asserts four causes of action:

- Count I alleges negligence and liability for a dangerous condition of public property under the TCA, Am. Compl. ¶¶ 40–47;

- Count II asserts a private nuisance claim based on the Township's alleged interference with Plaintiffs' use and enjoyment of the Property, *id.* ¶¶ 48–52;

- Count III alleges trespass arising from the repeated intrusion of stormwater onto the Property, *id.* ¶¶ 53–61; and

- Count IV asserts an inverse-condemnation claim under the Fifth Amendment and 42 U.S.C. § 1983, alleging that the recurring flooding and the Township's failure to correct the drainage condition effected a taking of Plaintiffs' property without just compensation, *id.* ¶¶ 62–66.

The Township filed a second pre-motion letter on May 23, 2025, D.E. 22, and answered the Amended Complaint five days later, D.E. 23.  Plaintiffs responded to the pre-motion letter on May 30, 2025.  D.E. 25.  The Court held a second pre-motion conference on June 30, 2025.  The parties agreed to meet and confer, and the Court authorized the Township to move if they could not resolve the dispute.  D.E. 28.

The parties did not resolve the matter.  The Township then filed a motion to dismiss Counts One through Three.  D.E. 31.  The Court administratively terminated the motion because the Township did not identify any federal rule under which it sought relief, nor did the Township supply a corresponding legal standard, even after Plaintiffs flagged the omission.  D.E. 39.

The Township refiled the Motion on January 5, 2026, under Rule 12(b)(6).  Mot.  The Motion is fully briefed and ready for a decision.

5

## II.    LEGAL STANDARD[3]

Rule 12(b) requires a movant to file its motion to dismiss *before* filing a responsive pleading.  Fed. R. Civ. P. 12(b).  Because the Township filed the Motion *after* answering the Amended Complaint, Rule 12(b)(6) is no longer procedurally available.  In other words, the Township invoked the wrong rule.  However, Rule 12(h)(2)(B) permits a party to raise a failure to state a claim under Rule 12(c).  Having already twice administratively terminated the Township's motions to dismiss this action, the Court finds it is in the interest of judicial efficiency to construe the Township's Motion as one for judgment on the pleadings under Rule 12(c).  *See Fish Kiss LLC v. N. Star Creations, LLC*, No. 17-8193, 2018 WL 3831335, at *4 (D.N.J. Aug. 13, 2018) (recognizing that the "sensible path" is for the Court to treat a motion brought under Rule 12(b)(6) as having been made under Rule 12(c) (citations omitted)).

A Rule 12(c) motion may be filed "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  When, as here, the motion asserts that Plaintiffs failed to state a claim, the Court applies the same standard governing Rule 12(b)(6) motions.  *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).  The Court thus accepts Plaintiffs' well-pleaded factual allegations as true, draws reasonable inferences in Plaintiffs' favor, and asks whether the pleadings state a facially plausible claim.  *Phillips*, 515 F.3d at 233–34.  An affirmative defense may support judgment on the pleadings only when the bar is apparent from those materials.  *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

## III.    ANALYSIS

The Township's Motion overwhelmingly turns on a single issue:  whether Plaintiffs complied with the notice requirements of the TCA such that their state-law claims may proceed. For the reasons explained below, the Court concludes Plaintiffs have not.

---

[3] All references to rules throughout this section refer to the Federal Rules of Civil Procedure.

6

A.      **Plaintiffs' State-Law Claims are Barred by the TCA**

1.      *Overview of the TCA*

The TCA bars a tort action against a public entity unless the claimant first presents a tort claims notice ("TCN") that satisfies the Act's requirements.  N.J. Stat. Ann. § 59:8-3.  The TCN must identify the claimant and their address; the date, place, and circumstances of the occurrence; the injury or loss; the responsible public entity or employee; and the amount claimed, including any known prospective loss and the basis for computing it.  *Id.* § 59:8-4.  "The New Jersey Supreme Court has held that claims against a public entity for dangerous condition, trespass, and nuisance are all governed by the TCA and its included notice requirements." *Tedesco v. Borough of Haddonfield*, No. 24-9005, 2025 WL 3213688, at *6 (D.N.J. Nov. 18, 2025) (quoting *Caputo v. Cherry Hill Township,* 2025 WL 2694007 at *3 (D.N.J. Sep. 22, 2025)).

The TCA "imposes a strict time limit for the filing of a notice of claim."  *H.C. Equities, LP v. Cnty. of Union*, 247 N.J. 366, 382 (2021).  The claimant must present that notice within ninety days after the claim accrues and must file suit within two years after the claim's accrual. *Id.* § 59:8-8.  "The notice requirement is 'a jurisdictional precondition to filing suit.'"  *Helms v. Miller*, No. 22-1325, 2025 WL 3022165, at *4 (D.N.J. Oct. 29, 2025) (quoting *Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 343 (App. Div. 2004)).

The TCA's notice requirement, however, "is not intended as 'a trap for the unwary.'" *Lebron v. Sanchez*, 407 N.J. Super. 204, 215 (App. Div. 2009) (quoting *Lowe v. Zarghami*, 158 N.J. 606, 629 (1999)).  Therefore, strict compliance with the TCA's notice requirements is not mandatory.  Indeed, "New Jersey courts have permitted plaintiffs who have not submitted TCNs to sue public entities where a defective notice has in fact supplied all or substantially all of the required information." *Fernandes v. City of Jersey City*, No. 16-7789, 2017 WL 5129886, at *7 (D.N.J. Nov. 6, 2017).  A timely written notice may substantially comply when it contains a

7

technical defect but still serves the TCA's purposes. *D.D. v. Univ. of Med. & Dentistry of N.J.*, 213 N.J. 130, 159 (2013); *Lebron*, 407 N.J. Super. at 215–16.

More concretely, substantial compliance turns on five factors: (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute;[4] (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute. *Herman v. S. Orange-Maplewood Sch. Dist. Bd. of Educ.*, No. 22-5873, 2023 WL 2540428, at *7 (D.N.J. Mar. 15, 2023) (quoting *H.C. Equities*, 247 N.J. at 386).

Relevant here, claims against a municipality that arise from repeated flooding caused by an allegedly defective drainage system accrue anew with each new injury. *Tedesco*, 2025 WL 3213688, at *6 (citing *Russo Farms, Inc. v. Vineland Bd. of Educ.*, 144 N.J. 84, 99–101 (1996)). "[E]ach new injury suffered by plaintiffs was a new tort because each contained every element of a tort, including a new breach of duty[ ]" to remedy the flooding. *Russo Farms*, 144 N.J. at 104. Therefore, past claims against a municipality from prior flooding events are not revived by a new flooding event. *See id.* Accordingly, *Russo Farms* only permitted the plaintiff to recover for the claims that accrued from flooding events within ninety days prior to their notice of tort claim and within the two year limitations period contained in N.J. Stat. Ann. § 59:8-8. *Id.* at 107.

> 2.    *Plaintiffs did not comply (or substantially comply) with the TCA's notice requirements*

Plaintiffs' claims in Counts One through Three of the Amended Complaint are subject to the TCA's ninety-day notice provisions. *See Tedesco*, 2025 WL 3213688, at *6 (first citing N.J. Stat. Ann. § 59:8-8; then citing *Russo Farms*, 144 N.J. at 99–101, 107). The "question for the

---

[4] Those purposes include prompt investigation, an opportunity to settle before suit, a chance to correct the condition, and advance notice of the public entity's potential liability. *See Beauchamp v. Amedio*, 164 N.J. 111, 121–22 (2000).

Court to answer is whether Plaintiffs complied with the TCA's notice of claim requirements." *Id.* (citations omitted).

Plaintiffs concede they did not serve a formal TCN before commencing this action.[5] *See* Opp'n at 1–2. They instead ask the Court to treat their numerous communications with the Township between 2020 and 2024 as providing substantial compliance with the TCN's notice requirements. To support that position, Plaintiffs emphasize that from their emails and phone conversations, the Township knew about the drainage problem, investigated the condition, consulted counsel, denied responsibility, and therefore suffered no prejudice from the absence of a formal notice. Opp'n at 7–14.

Plaintiffs' contentions are unpersuasive. For one, the majority of Plaintiffs' communications with the Township are outside "the strict two year bar for claims contained in [N.J. Stat. Ann. § 59:8-8(b)]," and therefore cannot provide the requisite notice. *Tedesco*, 2025 WL 3213688, at *7. Plaintiffs commenced this action on October 22, 2024. D.E. 1 at 1. Therefore, any claim accruing against the Township before October 22, 2022, is barred under N.J. Stat. Ann. § 59:8-8(b). *Tedesco*, 2025 WL 3213688, at *7 (collecting cases). It follows that "no communication which occurred prior to that date can constitute the required notice, regardless of whether or not the contents of those communications included all requisite information under the TCA[.]" *Id.*; *accord Miles v. City of Jersey City*, No. 14-5492, 2018 WL 4005742, at *9 (D.N.J. Aug. 22, 2018).

Plaintiffs' communications with the Township after October 22, 2022—Exhibits E and F—fare no better. Exhibit E, counsel's June 21, 2024 letter, provides some information required under

---

[5] Plaintiffs represent that they filed a TCN with the Township on July 17, 2025. Opp'n at 15. Because that filing is not included within the Amended Complaint, the Court will not consider it when deciding the Motion. And, in any event, a notice directed to later flooding events cannot revive claims based on earlier occurrences for which timely notice was not given. *See Russo Farms*, 144 N.J. at 107.

the TCA. The letter identifies Plaintiffs by name, provides the address of the affected property, identifies Piscataway Township as the public entity involved, and describes the alleged drainage condition in some detail. The letter also states that Plaintiffs' property had experienced flooding, summarizes Plaintiffs' engineer's report, and requests a meeting to discuss corrective action. However, the letter does not identify the date of any specific flood event, describe the circumstances of a specific occurrence giving rise to Plaintiffs' tort claims, nor mention any concrete injury or loss caused by a particular event. Importantly, the letter also does not state any amount claimed, identify any known prospective loss, or provide any basis for computing damages. From the plain text of the letter, its principal purpose is to seek a meeting with the Township to discuss corrective action concerning an ongoing drainage problem, not to present a claim for monetary compensation arising from an identified occurrence. Thus, although Exhibit E gave the Township notice of Plaintiffs' broader drainage concerns, it does not provide the occurrence-specific and damages-related information required by N.J. Stat. Ann. § 59:8-4.

Exhibit F, counsel's July 15, 2024, follow-up letter, is even more deficient. Like Exhibit E, it includes some of the required information, including the relevant Property. The letter, however, does not identify the date or circumstances of any flood event, nor does it describe any resulting injury or property loss. And like Exhibit E, it does not state an amount claimed, estimate any prospective loss, or provide a basis for calculating damages. Exhibit F therefore does not independently constitute a notice of claim under N.J. Stat. Ann. § 59:8-4.

Plaintiffs argue that this Court may rely on the communications collectively to find substantial compliance. *See* Opp'n at 13–14. The New Jersey Supreme Court rejected that approach in *H.C. Equities* when it explained that it is "inherently problematic to conclude that a collection of letters can, together, substantially comply with the notice requirement." 247 N.J. at

10

387. There, the court rooted its holding in the TCA's text, which repeatedly contemplates a single claim, not a public entity's reconstruction of one from scattered correspondence.  247 N.J. at 387.

Plaintiffs' efforts to distinguish *H.C. Equities* are unavailing.  Broadly speaking, Plaintiffs cannot avoid the holding of *H.C. Equities* simply by noting that the cases arise from different facts. A factual distinction matters only if it undermines the legal principle being applied. The distinctions identified by Plaintiffs do not.  For example, Plaintiffs first distinguish *H.C. Equities* on the ground that the communications there were principally sent to attorneys representing the public entities, whereas most communications here were sent directly to the Township or its Director of Public Works. Opp'n at 13–14.  While that distinction speaks to whether the Township received the communications—*one* factor mentioned in *H.C. Equities*—it does not cure the fragmented nature of Plaintiffs' notice or transform their requests for municipal action into notice of a tort claim.  *H.C. Equities* does not solely turn on whether the public entities received notice, but also the TCA's use of the singular throughout its text, the logical need for one ascertainable receipt date, the unreasonable burden imposed by aggregating communications, and the failure of the letters—individually or collectively—to convey the core information required by N.J. Stat. Ann. § 59:8-4.  247 N.J. at 387–90.

Plaintiffs next argue that, unlike the correspondences in *H.C. Equities*, their communications described the same flooding problem and the same tort claims ultimately pleaded. Opp'n at 14.  But consistent correspondence concerning the same subject does not amount to notice of a tort claim.  For instance, while a drainage complaint from a property owner may prompt a public entity to conduct an inspection and repairs, a tort claim requires the public entity to do more, such as evaluate a particular occurrence, determine the problem's causation, ascertain injuries, and consider defenses and settlement value.  Thus, Plaintiffs' general continuity of subject matter

11

across emails does not supply the missing statutory notice or other defects in their purported notice.[6]

Plaintiffs also attempt to justify their multiple communications by pointing out that the flooding on the Property constitutes a continuing tort.  Opp'n at 6, 14–16.  That argument misapprehends the continuing tort doctrine.  As explained in *Tedesco*, where another court in this District considered a nearly identical fact scenario:

> the continuing nuisance doctrine does not allow for avoidance of a limitations period but rather serves as an accrual test to allow claims that have accrued within the limitations period.  [*Russo Farms*, 144 N.J. at 105–107].  What that means in the context of this action is that the Plaintiffs are permitted to file an actual notice of tort claim for new claims which have since accrued as a result of the continuing nuisance.  What this does not do is extend the two-year limitations period indefinitely to allow Plaintiffs to include all prior claims for damages following this new notice.  The new notice of claim allowed by the continuing nuisance doctrine would lead to a suit materially different than the instant action and would be limited to the claims and damages encompassed in the notice actually given.

2025 WL 3213688, at *8 (footnotes omitted).  As *Tedesco* makes clear, even assuming a new flooding event may generate a newly accruing claim for Plaintiffs, each actionable occurrence remains subject to the TCA's notice requirements.[7]

The remaining substantial compliance factors also favor the Township.  Plaintiffs identify no step they have taken to comply with the TCA (before commencing this action) and offer no explanation for failing to serve a statutory notice.  As noted above, their timely communications discussed the drainage condition and sought intervention from the Township.  *See* Exs. E & F.

---

[6] In short, the controlling principle of *H.C. Equities* is that a claimant may not reconstruct substantial compliance from a collection of communications that never conveyed the core information required by § 59:8-4 in an identifiable notice.  That principle is directly applicable here.

[7] As Plaintiffs note, the continuing tort doctrine "accrues anew each day."  Opp'n at 15.  The Court's ruling therefore does not foreclose Plaintiffs from pursuing timely claims based on future or recent flooding events.  It only bars claims arising from events that fall outside the TCA's two-year limitations period or for which Plaintiffs failed to serve a tort claims notice within ninety days of accrual.

They did not provide reasonable notice of a discrete tort claim or the Township's potential monetary exposure.  Therefore, although the Township's knowledge and investigation reduce any claim of factual prejudice, the lack of prejudice alone cannot transform years of correspondence into a timely notice of claim.

Finally, contrary to Plaintiffs' claim that this Court's conclusion puts procedure over substance, the Court's finding serves numerous substantive purposes and is aligned with the purposes of the TCA's notice requirements.  Requiring a municipality to review every letter and email and decide whether the communications, viewed together over a span of years, reveal an intent to sue would recreate the confusion the notice requirement is designed to avoid.  *See H.C. Equities*, 247 N.J. at 387–88.  It would also create uncertainty about what event triggered the TCA's ninety-day deadline, when the six-month waiting period began, what injuries were included, and what financial exposure the entity was expected to evaluate.[8]

Plaintiffs therefore did not substantially comply with the TCA.  Accordingly, Plaintiffs' claims based on Counts One, Two, and Three of the Amended Complaint are **DISMISSED *with prejudice***.  Count IV remains.

## IV.    CONCLUSION

For the reasons above,

**IT IS**, on this **11th** day of August, 2026,

**ORDERED** that Defendant's Motion, D.E. 40, is **GRANTED**; and it is further

---

[8] Relatedly, the Court is unpersuaded by Plaintiffs' appeal to judicial economy as a ground to find substantial compliance.  Opp'n at 15.  If Plaintiffs were interested in a quick resolution of this action, they could have—at any point prior to commencing this action—filed a TCN.  Instead, they chose to bring this action despite caselaw making clear that their notice to the Township across a series of emails was deficient as a matter of law.

**ORDERED** that Counts One, Two, and Three are **DISMISSED** *with prejudice*;[9] and it is further

**ORDERED** that Plaintiffs may file a second amended complaint within **30 days** of this Order based on any claims arising from flooding events that are not barred by the TCA—namely, those related to its 2025 TCN.

Evelyn Padin, U.S.D.J.

---

[9] For the avoidance of doubt, the Court dismisses Counts One through Three as pleaded in the Amended Complaint because Plaintiffs failed to comply with the NJTCA's notice requirements with respect to the flooding events and resulting damages asserted in this action. This holding does not decide the viability of any claim based on a later, distinct flooding event that is not at issue here. Any such claim, however, must independently satisfy the NJTCA's notice and limitations requirements and may not revive claims or damages dismissed by this Opinion. Nor does the Court's decision address the viability of any claim arising from the 2025 flooding events referenced in Plaintiffs' Opposition, which are not pleaded in the Amended Complaint. Those events cannot preserve or revive the claims and damages asserted here.

14